## The Philadelphia & Reading Terminal Railroad Company's Appeal.    In re Melon Street.

*Road law—Statutes—Repeal—Vacation of streets.*

The 6th section of the act of April 21, 1858, P. L. 386, so far as the same applies to the vacation of streets in the city of Philadelphia, is not repealed.

*Vacation of streets—Abutting owners—Damages.*

Where part of a street in the city of Philadelphia is vacated, in a proceeding in the court of quarter sessions under the act of 1858, to assess damages, owners of property abutting on the part of the street not vacated are not entitled to damages unless access is cut off, rendered dangerous or practically useless.

*Vacation of part of street—Partial interference with access.*

In the vacation of part of Melon street in the city of Philadelphia, the owners of property abutting on the portion not vacated were cut off from access through Ninth street to the general plan of streets, but their access by way of Tenth street to the same general plan of streets was unimpaired. *Held*, that they sustained no special injury entitling them to damages.

*Assessment of damages—Control of appellate court—Release.*

Where the jury of view in assessing damages for vacating part of Melon street considered in connection therewith damages for the vacation of Ninth street: *Held*, that though this was erroneous, the appellate court could order a release to be filed by the petitioners for all damages caused by the vacation of Ninth street, and thus protect appellant's rights.

*Report of jury of view—Assessment of benefits—Defective finding as to ownership.*

Where, under the statute, a jury of view can apportion and assess benefits only against the owners of land benefited, and the report of viewers apportions and assesses such benefits against one party but fails to set forth that such party is the owner of land, the report cannot be sustained.

Argued Nov. 4, 1895.    Appeal, No. 18, Nov. T., 1895, by the Philadelphia & Reading Terminal Railroad Company, from

judgment of Q. S. Phila. Co.    Before RICE, P. J., WILLARD,
BEAVER, REEDER, WICKHAM, MCCARTHY and ORLADY, JJ.
Reversed.    RICE, P. J., and BEAVER, J., dissent.

The proceedings were initiated under the ordinance of July 14,
1891.    It provided, inter alia, for the striking from the city plan
of that part of Melon street between the west line of Ninth
street and a point one hundred and thirty-two feet, one and
one half inches west thereof, on the south side of Melon street,
and one hundred and twenty-two feet six and three quarter
inches west thereof, on the north side of Melon street.

The petitioner, Sarah Ann Eddowes is the owner of No. 912,
Melon street, a property on the south side, commencing one
hundred and thirty-two feet, one and one half inches from the
west side of Ninth street, containing eighteen feet on Melon
street.

It thus appears that the whole of petitioner's property is west
and outside of the part of Melon street vacated.

The other claimants are all owners of property west of the
Eddowes property, being Nos. 914 to 924 inclusive on the south
side, and Nos. 913 to 925 on the north side.

All the property abutting upon that portion of Melon street
between the points named in the ordinance of July 14, 1891, is
owned by the Philadelphia & Reading Railroad Company.

The Philadelphia & Reading Terminal Railroad Company
has constructed its railroad from a point in Ninth street, va-
cated, across the part of Melon street, vacated.

The revision of the city plan under the said ordinance was
duly confirmed by the board of surveyors upon October 5, 1891.

Upon December 26, 1890, an ordinance was passed relating
to the construction of the railroad of the Philadelphia & Read-
ing Terminal Railroad Company (Ord. 1890, page 420), under
section 3 of which a revision of the city plan was authorized and
directed by striking therefrom, among other streets, Ninth street
from Fairmount avenue to Green street.

This revision was made and duly confirmed by the board of
surveyors on March 16, 1891.

The city plan is shown on next page (65).

The award of the jury was as follows:

And now, after a full and impartial consideration of all tes-timony submitted to them, and after a careful view and review of the premises, and acting on their best judgment, the jury therefore find that the following property owners are damaged to the amount set opposite their respective names:

| | | | |
|---|---|---|---|
| Sarah Ann Eddowes<br>Eleanor Eddowes<br>Hannah R. Eddowes<br>Camella Eddowes | 912 Melon Street | | $1,200 00 |
| Maria L. Hinchman<br>Henry F. Hinchman | ·914 " " | | 1,100 00 |
| A. G. Crowl | 916 " " | | 900 00 |
| Harriet Perkins | 918 " " | | 700 00 |
| William H. Herring<br>Louisa H. Herring | 920 " " | | 500 00 |
| " | 922 " " | | 350 00 |
| Estate of Jacob Stadelman | 924 " " | | 300 00 |
| William H. Bower | 913 " " | | 1,200 00 |
| " | 915 " " | | 1,100 00 |
| John Highley | 917 " " | | 900 00 |
| George Nass, Jr. | 919 " " | | 700 00 |
| Caroline and Matilda Levering | 921 " " | | 500 00 |
| Caroline Young | 925 " " | | 300 00 |
| | | | $9,750 00 |

And they do further find that the Philadelphia & Reading Terminal Railroad Company is specially benefited to an amount not less than $9,750.

The jury therefore report that in their opinion the said claim-ants are entitled to the sum of $9,750, above awarded as dam-ages, and they assess and apportion the whole of said sum of $9,750 against the said The Philadelphia & Reading Terminal Railroad Company.

*Errors assigned* were: (1) Because the Q. S. has no jurisdic-tion in the premises. (2) Because it appears by the said report that none of the claimants to whom damages are awarded by the said report is the owner of property abutting upon that portion of Melon street vacated. (3) Because the report does not show any damage caused by the vacation of part of Melon street for which a recovery can be had. (4) Because the facts

set out in the petition for a jury are not sufficient to maintain the same. (5) Because it appears by said report that the injury to the claimants' properties upon Melon street, for which damages are awarded by the said report, is caused by the vacation of Ninth street between Green and Fairmount avenue, for which no damages can be recovered in this proceeding. (6) Because it appears by the said report that the damage to the claimants' property arises from the deprivation of an outlet eastward by way of Ninth street to the general system of streets in the city of Philadelphia, and that this damage would have existed upon the vacation of Ninth street, though no portion of Melon street had been vacated. (7) Because none of the claimants in this proceeding can recover damages in any proceeding alleged to have been suffered in consequence of the vacation of Ninth street. (8) Because it does not appear by the said report that the Philadelphia & Reading Terminal Railroad Company, against which the whole amount of damages awarded is assessed, is the owner of land benefited by the vacation of Melon street. (9) The court below erred in overruling the motion to quash the petition. (10) The court below erred in confirming the report of the viewers. (11) The court below erred in holding that the claimants were entitled to the sum of $9,750, awarded to them by the report of the viewers, as damages. (12) The court below erred in holding that the whole of the said sum of $9,750 was lawfully assessed and apportioned against the Philadelphia & Reading Terminal Railroad Company.

*Thomas Hart, Jr.*, with him *John G. Lamb*, for Appellant.—The act of April 21, 1858, is repealed by the act May 8, 1889, P. L. 129, and May 16, 1891, P. L. 75; act of June 12, 1893, P. L. 439.

The language of the act of 1858 is peculiar and defective: See Chestnut Ave., 3 Phila. 265; Sower v. Phila., 35 Pa. 231. So far as the opening of streets is concerned the act of 1858 is repealed by the act of April 1, 1864, P. L. 206. This was expressly ruled in Norris' App., 61 Pa. 424. In Howard St., 142 Pa. 601, the act was discussed and held not inoperative because there is no express provision for the appointment of a jury to assess damages for the vacation of a street. Howard St. arose out of the vacation of a street in 1888 before the passage of acts

of 1889 and 1891. On the subject of the application of the general road law to Philadelphia: See Smedley v. Erwin, 51 Pa. 445, and Ridge Ave., 99 Pa. 469; as to cases of laying out and vacating: See Chestnut St., 8 Pa. C. C. 55; Sewer St. Case, 20 Phila. 367. The act of June 12, 1893, P. L. 459, was applied to change of grade, Orthodox St., 1 Dist. Rep. 37, and it is urged must be applied to all future cases of vacation of streets. The act of 1891 was held to be a general act in Hand v. Fellows, 148 Pa. 456; Park Avenue Sewers, 169 Pa. 433.

On the question of implied repeal appellant cited: Martz's Election, 110 Pa. 502; Ruan St., 132 Pa. 257, and Norris' App., 61 Pa. 424.

As to the second assignment of error cited: Centre St., 115 Pa. 247; Howard St., 142 Pa. 601; Hove v. Rice, 142 Pa. 608. No consequential damages attach at common law for loss in vacating a street: Paul v. Carver, 24 Pa. 207, and compensation will not be due simply because the act complained of is done under an authority conferred by the statute: Hare's Am. Const. Law, vol. 1, p. 417, citing Rigney v. Chicago, 102 Ill. 64; Chicago v. Bldg. Assn., 102 Ill. 380; McCarthy v. Board of Works, 43 L. J. C. P. 385. See also, our own Pennsylvania cases of R. R. v. Lippencott, 116 Pa. 472, and R. R. v. Marchant, 119 Pa. 541. That damage, of the kind alleged here, is not such special damage has been decided many times in cases arising from the obstruction in streets. It is indisputable that if Melon street were unlawfully obstructed by the exceptants upon the same lines as those of this vacation, an action for damages in consequence thereof could not be sustained: Black v. R. R., 58 Pa. 249; Cox v. R. R., 10 W. N. 552; Cox's App., 11 W. N. 571; Buck Mountain Coal Co. v. Lehigh Coal & Iron Co., 50 Pa. 91; Sparhawk v. R. R. Co., 54 Pa. 401; Gold v. City, 115 Pa. 184; Dooner v. R. R., 142 Pa. 36; Hobson v. City, 155 Pa. 131; Jones v. R. R., 151 Pa. 30; Lawrence v. Phila., 154 Pa. 20; McGee's App., 114 Pa. 470. Appellant also cited on this point a number of cases from other states which are considered in the opinion of WILLARD, J.

On the twelfth assignment appellant contended that it had not been made to appear that it owned land which is benefited, citing: Allegheny v. R. R., 138 Pa. 375; Morewood Ave., 159 Pa. 20; 54th St., 165 Pa. 8; Park Avenue Sewers, 169 Pa. 433.

*William W. Porter*, with him *Frederick J. Geiger*, *Edward Shippen*, *George Q. Horwitz*, *Edward Brooks, Jr.* for claimants. —There can be no question that up until the year 1889 the court of quarter sessions of Philadelphia county had jurisdiction to appoint viewers to assess damages caused by the vacation of streets.

It was expressly decided in Howard Street, 142 Pa. 601 (1891), that the act of April 21, 1858, § 6, P. L. 386, taken in connection with the act of June 13, 1836, § 1, P. L. 555, gave the court of quarter sessions of Philadelphia county jurisdiction to appoint six viewers to assess damages caused by the vacation of streets.

It is however strongly contended by the appellant that this method of procedure for the ascertainment of damages occasioned by the vacation of streets in Philadelphia, established by the two acts of June 13, 1836, and April 21, 1858, has been superseded and repealed by the general act relating to municipal street improvements passed May 16, 1891, P. L. 75, and amended by the act of June 12, 1893, P. L. 459.

The ground of this contention is that while the act of 1891 contains no repealing clause whatsoever, its provisions are nevertheless so inconsistent with the provisions of the act of 1858 that the latter is repealed by implication.

. The answer to this contention is however that a general statute without negative words will not repeal a previous local statute, even though the provisions of one be totally inconsistent with the provisions of the other. See Morrison v. Fayette County, 127 Pa. 110.

Does the alleged prior vacation of Ninth street prevent the claimants from recovering in this proceeding? Amendments may be made on the argument in the Supreme Court: Shaffer v. Eichert, 132 Pa. 285; Trainor v. Railroad Co., 137 Pa. 148.

. In Mellor v. Philadelphia, 160 Pa. 614, where precisely the same state of facts arose with reference to a change of grade, the proceedings as in this case were for damages in respect to one street alone. Evidence was admitted which tended to prove that the damage was caused by the change of grade of two streets, upon a release of damages for the other street being filed by the plaintiffs.

All throughout the proceedings in this case the counsel for

the petitioners have expressed a willingness to file a release of damages for the vacation of Ninth street so as to preclude the possibility of a double recovery, and it is submitted that it is in the power of your honorable court, if it shall seem proper, to affirm the decree of the lower court on condition that such a release be filed.

Is an owner whose property does not abut upon the vacated portion of a street entitled to compensation for damages resulting from such vacation?

1. The claim of the appellees is not based upon a common law right, citing: Paul v. Carver, 24 Pa. 207; McGee's App., 114 Pa. 470; Centre St., 115 Pa. 247; Howard St., 142 Pa. 601; Snyder v. Lancaster, 20 W. N. 184; Chestnut Ave., 68 Pa. 81; McClure's App., 38 P. L. J. 127; Geiger v. Norristown, 6 Montg. 157; Mellor's App., 160 Pa. 614.

2. The appellees have suffered such special damages as will entitle them to recovery.

The answer to this contention is that the use of a street by owners as a means of ingress or egress to their properties does differ in kind from the use by the general public in that the nature of this use of the street is closely allied to ownership of property. It will not be contended for a moment that this use is an incident to ownership, but merely that in its nature it is closely allied to the ownership of property, while the same use by the public is based entirely upon membership in a great municipality or commonwealth.

This is a construction which has already received the sanction of judicial decision: Braken v. R. R., 29 Minn. 41; Fritz v. Hobson, L. R. 14 Ch. Div. 542, is also in accord with this view.

Is the omission of the jury of view to find specifically that the appellant is an owner of land benefited by the vacation, a fatal defect in their report?

It is contended on behalf of the appellant that inasmuch as the report of the jury of view contains no specific finding that the appellant is the owner of land benefited by the vacation of Ninth and Melon streets, it is fatally defective.

The act of April 21, 1858, does not in terms require an express finding to this effect. It merely requires that the jury shall assess and apportion the damages " among and against such owners of land as shall be benefited by such vacation."

The fact that the jury has assessed damages against the appellant is a finding by implication that it is the owner of land benefited by the vacation, and the act certainly requires no express finding on this point.

See also Centre Street, 115 Pa. 247.

OPINION BY WILLARD, J., December 18, 1895:

The first, tenth and twelfth assignments of error raise the question squarely, whether the proceedings in the court below were properly instituted under the provisions of the 6th section of the act of April 21, 1858.

The contention of the appellant is that the court of quarter sessions of the county of Philadelphia was without jurisdiction in the premises, and this involves the question whether the act of April 21, 1858, has been repealed or not. The appellant claims that by the provisions of the act of May 8, 1889, and of May 16, 1891, the act of April 21, 1858, was repealed. This leads us to a consideration, first, of the act of May 16, 1891. At the time this act was passed, extensive municipal improvements had been commenced and were in process of construction in the city of Pittsburg, under the provisions of the act of June 14, 1887. By a decision of the Supreme Court, that act was declared unconstitutional (Engel's App., 27 W. N. C., 136), and the city of Pittsburg was powerless to collect assessments for work completed, or to prosecute other contemplated municipal improvements. On May 16, 1891, three acts of assembly were approved, one of them entitled " An act to authorize the ascertainment, levy, assessment and collection of the costs and damages and expenses of municipal improvements, including grading, paving, macadamizing, or otherwise improving of any street, lane or alley, or part thereof, completed or in process of completion ; and also, the costs, damages and expenses of the construction of any sewer completed or now in process of completion, and authorizing the completion of any such improvement." P. L. 1891, p. 71. The second act is entitled " An act in relation to the laying out, opening, widening, straightening, extending or vacating streets and alleys, and the construction of bridges in the several municipalities of this commonwealth ; the grading, paving, macadamizing, or otherwise improving streets and alleys, providing for ascertaining the damages to

private property resulting therefrom, the assessment of the damages, costs and expenses thereof upon the property benefited; and the construction of sewers and payment of the damages, costs and expenses thereof, including damages to private property resulting therefrom." P. L. 1891, p. 75. The third of these acts, P. L. 1891, p. 80, is an act repealing fifteen special or local acts relative to streets, alleys, bridges, sewers, etc., in the city of Pittsburg.

The second of these acts, as its title indicates, provided a code for every municipality in the commonwealth, relative to opening, widening, straightening, extending or vacating streets and alleys. It provides for the presentation of petitions by the proper parties, to the courts of common pleas of the proper county, and for the appointment of three freeholders as viewers. By the 9th section of said act, it is provided that municipal corporations shall have power to open, widen, straighten or extend streets or alleys, and to vacate the same upon petition of a majority in number and interest of owners of property abutting on the line of the proposed improvement. In connec tion with the other two acts above cited, approved at the same time, it is evident that these acts were passed for the relief of the city of Pittsburg, in view of the unconstitutional legislation under which municipal improvements had been made and which, at the time of the passage of these acts were stayed for want of appropriate and adequate legislative authority. The act of May 16, 1891, P. L. 71, was passed to remedy and provide for the mischief done under the provisions of the act of June 14, 1887, declared unconstitutional. The act of May 16, 1891, P. L. 80, repeals certain acts and parts of acts concerning streets and sewers in the city of Pittsburg. These acts and parts of acts, as above stated, were fifteen in number and were applicable to the city of Pittsburg. It was thus clearly indicated by the legislature that no special or local act was intended to be repealed by the act of May 16, 1891, P. L., 75, except the acts and parts of acts mentioned in the repealing act above cited. Said act contains no repealing clause. The act approved May 8, 1889, P. L., 129, entitled "An act fixing the number of road and bridge viewers," whether intended to apply to country or city, contains this express exception, "This act shall not apply to counties having local acts inconsistent herewith."

If the act of April 21, 1858, is a special or local act, then the act of May 16, 1891, above cited, did not repeal its provisions, as a general statute without negative words will not repeal a previous local statute, even though the provisions of both are inconsistent with each other.

The question then, of jurisdiction hinges upon whether the act of April 21, 1858, is a special or local act. That act is entitled " A further supplement to the act incorporating the city of Philadelphia." The 6th section of the act pertains to the question we are considering, and is here inserted. " Section 6. That it shall be the duty of juries selected to assess damages for the opening, widening or vacating roads or streets within the said city to ascertain and report to the court: First, what damages the parties claiming the same are entitled to ; and second, to assess and apportion the same among and against such owners of land as shall be benefited by such opening, widening or vacating any such road or street; and when such report shall be affirmed by the court, upon notice to all such parties and the damages paid or secured by the parties among and against whom it shall be so assessed and apportioned, the chief commissioner of highways shall proceed to open, widen or vacate such road or street accordingly : Provided, however, that it shall be lawful for councils when in their judgment the public interests shall require it, to provide for the payment of such damages out of the city treasury; and further provided, that two-thirds of the members of each branch of councils present, at the passage of such ordinance, consent thereto, and the yeas and nays on the passage thereof, shall be entered on the journals." That this section applies only to the city of Philadelphia, is too plain for argument. The act of April 1, 1864, P. L. 206, entitled " An act relating to the opening of streets and payment of damages therefor in the city of Philadelphia," while it provides a new method of assessing damages for the opening of streets, in no way modifies or repeals that part of the act of April 21, 1858, as to vacation. As to the mode of appointing viewers under the act of June 13, 1836, P. L. 566, the 76th, 77th, 78th, 79th, 80th and 81st sections of said act, provide a peculiar method of selecting viewers in the city of Philadelphia. By the provisions of the act of March 16, 1866, P. L., 224, the above-quoted sections were expressly

repealed, together with the proviso to the first section of said act, and in lieu thereof, it was enacted as follows : " And hereafter, in all cases relating to the opening of streets upon the plans of the city of Philadelphia, and of view, review and assessment of damages, for and in relation to roads, bridges or property, otherwise taken for public use, the persons appointed to view, review and assess damages shall be appointed by the court of quarter sessions of the county of Philadelphia, in the same manner, with the same qualifications, and to have the like powers, and perform the like duties, as is provided by the general laws of this commonwealth." The 6th section of the act of April 21, 1858, in connection with the act of March 16, 1866, provided a system for the vacation of streets, peculiar to the city of Philadelphia ; a system perfect in its operation, local in its application, and as such has been resorted to from the date of its passage in all proceedings for the vacation of streets in the city for which it was intended. That the 6th section of the act of 1858 was in full force and operation before the passage of the acts of 1889 and 1891 above referred to, was fully settled by Mr. Justice MITCHELL, in In re Howard Street, 142 Pa. 601. As it is perfectly clear that the act of 1858 is a local and special act, so far as it provides for the assessment of damages and benefits in the vacation of streets and proceedings for that purpose, the act is not repealed and the court of quarter sessions of Philadelphia had full jurisdiction of the proceedings in that court. Therefore it follows that the 1st, 10th and 12th assignments of error must be overruled.

The 2d, 3d, 4th, 9th and 11th assignments of error, raise the principal question in this case. The appellant's case is founded upon exceptions to the report of the jury of view. The first exception filed in the court below is as follows :

1. " Because it appears by the said report that none of the claimants to whom damages are awarded by the said report is the owner of property abutting upon the portion of Melon street vacated."

This exception goes to the very root of the controversy. The first duty imposed upon the jury of view by the act of assembly under the provisions of which they were acting, was, " To ascertain and report to the court, first, what damages the parties claiming the same are entitled to."

Our first duty in considering this question is to inquire whether the parties claiming are entitled to any damage. On a careful examination of the record, we find. that Melon street from the west side of Ninth street to Ridge avenue, had been for many years (prior to its partial vacation) a public highway and street. That the councils of Philadelphia, by ordinance duly approved on July 14, 1891, revised that portion of the city plan of streets comprised between Ninth, Tenth and Wallace streets and Fairmount avenue, in the Thirteenth ward of the city of Philadelphia, by striking therefrom, that portion of Melon street lying between the west line of Ninth street and a point one hundred and thirty-two (132) feet one and one half (1½) inches west thereof, on the south side of Melon street, and a point one hundred and twenty-two (122) feet, six and three quarters (6¾) inches west of Ninth street on the north side of Melon street. It further appears that the properties of all the parties to whom damages were awarded, did not abut on the part of Melon street vacated, but commenced at the point of vacation, extending westward toward Tenth street, from No. 912 to 924 on the south side of Melon street, and from 913 to 925 on the north side of said street. Numbers 912 and 913 being nearest to the vacated portion, and Nos. 924 and 925 most distant therefrom. It further appears, from the viewers' report, that before the vacation complained of, Melon street was an open, public highway from Ridge avenue to the west side of Ninth street between Fairmount avenue and Green street, in the city of Philadelphia. It further appears, from the revised plan referred to in the petition and report of viewers thereon, that the properties Nos. 912 and 913, measuring from the center of each property, are one hundred and forty-one (141) feet from Ninth street, and two hundred and fifty (250) feet from Tenth street; that the properties Nos. 924 and 925, from the centers thereof, are two hundred and forty (240) feet from Ninth street, and one hundred and fifty-one (151) feet from Tenth street; that the properties Nos. 918 and 919, measuring from the centers thereof, are one hundred and ninety-two (192) feet from Ninth street, and one hundred and ninety-nine (199) feet from Tenth street. It further appears, from said revised plan, that Melon street is about forty-nine feet in width, including sidewalks, and from curb to curb it is about twenty-five

feet in width. It further appears in the language of the report
of the jury of view, " That the damage to the claimants' prop-
erties upon Melon street, is caused by the closing up of Ninth
street and Melon street in manner aforesaid, thus depriving
them of an outlet eastward by way of Ninth street to the gen-
eral system of streets in the city of Philadelphia. Their outlet
to the westward is not in any way impaired." From these facts,
disclosed by the record, we have this proposition. Are the own-
ers of thirteen lots abutting on the portion of Melon street not
vacated, situated about equi-distant between Ninth and Tenth
streets, entitled to damages by reason of the vacation of Ninth
and Melon streets, thus depriving them of an outlet eastward
to the general system of streets, while their outlet westward to
and through Tenth street to the same general system of streets,
is unimpaired?

. In discussing this proposition, in order to sustain the conten-
tion and claim of the appellee, it must clearly appear that these
thirteen owners of properties on Melon street have sustained
injury distinct from that of the public in general. It is for the
court to instruct the jury as matter of law what constitutes
special injury, and the jury to find the amount thereof. In
this case, under these facts, can it be said as matter of law
that the properties Nos. 924 and 925 have been specially in-
jured, and Nos. 926 and 927 on the same street have not? No
such rule can be established and no attempt to establish such
a rule has ever been successfully made. Properties abutting
on the vacated portion of a street are specially injured because
access to such properties is essential to the enjoyment thereof,
and is so coupled with the properties as to be a part thereof.
So when the vacation of part of a street actually destroys or
renders impracticable, access to properties on the same street,
but not abutting on the vacated portion, there is a special in-
jury on the same principle. By adhering to this rule, it is easy
to declare what constitutes special injury. By departing from
it, how can juries be instructed where special injury begins and
ends? The language of the act of 1858 is as broad as the pro-
visions of the 8th section of Art. XVI. of the Constitution, and
the decisions of our Supreme Court, in construing the constitu-
tional provision, can be safely resorted to in deciding the ques-
tion of injury in this case. In Penna. R. R. Co. v. Lippincott,

116 Pa., 472, where the erection of the company's elevated tracks on the opposite side of the street did not in any way prevent free access to the plaintiff's property, it was held that there was no such injury thereto as would entitle him to recover. In County of Chester v. Brower, 117 Pa. 647, where the county had erected a bridge over a creek in the borough of Phœnixville, and in the construction of abutments or approaches to the bridge, had built a wing-wall in front of the plaintiff's house and only seven feet distant therefrom, thereby seriously interfering with his access thereto and his reasonable use and enjoyment of the same, it was held that the plaintiff was entitled to recover. In Penna. R. R. Co. v. Marchant, 119 Pa. 541, the facts were that the elevated railroad of the Pennsylvania Railroad Company was built on the south side of Filbert street, and in its construction, in no way prevented free access to the plaintiff's property. Chief Justice PAXSON distinguished the case from Railroad Co. v. Duncan, where access to the property was destroyed. In Gold v. City, 115 Pa. 184, where the city authorities left the street in front of plaintiff's property in such bad condition as to be almost impassable, and all persons who could do so, avoided it, whereby plaintiff's business as an innkeeper was greatly reduced, because of the fact that her ingress and egress from the property was not prevented, she was held not to have suffered such a special injury as to entitle her to maintain her action. The court said in affirming the court below, " The learned referee ruled this case upon the familiar and well-settled principle that one who is injured by a public nuisance, either in his person or in his property, cannot have his remedy by action unless he can show a damage which is peculiar to himself, and different in kind and degree from, and beyond that which is sustained by the general public." In Dooner v. Penna. R. R., 142 Pa. 36, among other facts agreed upon was the following: " That the premises of the plaintiff consist of a lot of ground and a three-story brick messuage thereon erected, situate on the north side of Filbert street at a distance of thirty-four feet east of Nineteenth street, containing in front on Filbert street, sixteen feet, and extending in depth one hundred and seventeen feet to Cuthbert street. The said Filbert street is fifty-one feet wide and the entire width thereof intervenes between the plaintiff's premises and the defendant's road

at the point where the elevated railroad passes in front of the plaintiff's premises." It was held that the plaintiff could not recover, and that the case was governed by Railroad Co. v. Lippincott.

In Pennsylvania Schuylkill Valley R. R. Co. v. Walsh et al., 124 Pa. 544, and R. R. v. Ziemer, 124 Pa. 560, the plaintiffs were awarded damages on the ground that access to their properties was cut off, and in his opinion Chief Justice PAXSON in the former case, says : " The track was laid close to the curbstone on the side of the street near to the plaintiff's property, by means of which the access thereto, if not actually cut off, was rendered dangerous."

In McGee's Appeal, 114 Pa. 470, the city of Pittsburg, under legislative authority, vacated a portion of Washington street and allowed the Pennsylvania Railroad Company to occupy the same. McGee owned property abutting on Washington street beyond the vacated portion, and applied for an injunction to restrain the city and railroad company from vacating the street. The injunction was dissolved on the ground that " public streets and highways belong to the commonwealth, and when the government sees fit to vacate them, the consequential loss, if there be any, must be borne by those who suffer it."

The cases from other states cited by appellants' counsel, in their exhaustive and able argument, are strikingly in point.

Smith v. Boston, 7 Cushing, 254, was a petition for assessment of damages alleged to have been done to the plaintiff in his property by the discontinuance of a portion of Market street, in the city of Boston, by the order of the mayor and aldermen.

The discontinuance complained of was all that part of Market street covered by the Boston & Maine Extension Railroad, the proprietors of which had been permitted by their charter to extend their road through part of the city. The petitioner owned several lots on or near Market street, and offered to prove that the value of each had been lessened, and the rent of one or more of them diminished, but it appeared that no one of the parcels bounded on that part of the street which had been discontinued, and that all were accessible by other public streets. The presiding judge ruled that the petitioner was not by law entitled to prove and recover any damages, because neither of his estates abutted on that part of Market street

which was discontinued, and by his direction, a verdict was entered for the respondents. Upon exception to this ruling, the case was heard in the Supreme Court.

The Massachusetts Revised Statutes, chap. 24, sec. 11, provides for payment, if any damage shall be sustained by any person in their property by the laying out, altering or discontinuing of any highway.

SMITH, Chief Justice, in overruling the exceptions, said: " He (plaintiff) may feel the inconvenience (from shutting up of the street) more in consequence of the proximity of his lots and buildings, still it is a damage of like kind and not in its nature peculiar or specific. Though a man who lives near an obstruction in a highway, and has occasion to pass it daily, suffers a damage altogether greater than one who lives at a distance, he can have no private action, because in its nature it is common and public. The damage complained of in this case, though it may be greater in degree in consequence of the proximity of the petitioner's estate, does not differ in kind from that of the other members of the community who would have occasion, more or less frequently, to pass over the discontinued highway.

*The petitioner has free access to all his lots.* The burden of his complaint, therefore, is that in going to some of his houses in some directions, he may be obliged to go farther than he otherwise would. So must the inhabitants of the south end of the city or the citizens of other towns, with their teams or carriages, who have a right to use the discontinued highway." To the same effect is Davis v. The Com'rs, 153 Mass. 218; Hammond v. Com'rs, 154 Mass. 509 ; Stanwood v. City of Malden, 157 Mass. 17.

In City of Chicago v. Building Ass'n, 102 Ill., 379, it was proposed to vacate a street, and a property-owner three and one half blocks away, filed a bill to prevent it, alleging that it would thereby suffer great damage to its property. The Supreme Court reversed the decree of the lower court, granting the prayer of the bill on the ground that no special or peculiar injury was shown, since it could not be reasonably claimed that the closing of the street in any degree interfered with access to its lot, or its use and enjoyment. Though this property had been specially assessed as benefited by the opening of the portion of the street now to be vacated, it was held that this gave it no special property in that part of the street.

In Kimball v. Com'r, 74 Mich. 699, petition for certiorari to review action of commissioner discontinuing Centre street from Hall street to Home street, plaintiff claimed to own land on the south side of Home street and east side of Centre street. Notice of proceedings was given only to landowners on that portion of street discontinued. The Michigan statute, which allowed highways or parts of highways to be discontinued, required notice to be given to owners and occupants of land through or adjoining which it was proposed to discontinue and also that the commissioner should view the premises, determine the necessity of discontinuing the highway, and appraise the damage on account thereof, if any is claimed. It was held that the meaning of this was to confine the adjacency to the part discontinued, and that the only persons who can complain must be such as are directly affected in their convenience of access to their property, and who are liable to lose their immediate means of communication, and that plaintiff, who had another mode of access to his property, had no interest in the proceeding.

In Shaubut v. Railroad Co., 21 Minn., 502, plaintiff was an owner of land upon a street, another part of which was unlawfully obstructed by the defendant. Held, that the injury suffered by plaintiff in consequence of the obstruction was an injury in common with the public at large, the only difference in the injury suffered by him and that suffered by the public being a difference in degree, not in kind. The court said: "What might be the plaintiff's rights if the obstructions had the effect to cut off the access to his land, we need not inquire, since both diagram and the testimony show he has that access through other streets without the necessity of passing over the obstructed portion of the street."

In Brakken v. Railroad, 29 Minn. 41, where the question of obstructing access arose, the court held that the owner of land abutting on a public street has, as such, a special interest in the street, different from that of the general public, as to entitle him to maintain a private suit for damages against the party who wrongfully obstructs the street in front of or near his property so as practically to cut off public access to it.

In re Centre Street, 115 Pa. 247, does not sustain the right of property owners on the same street not abutting on the part

vacated to recover special damages.   By an examination of the case in the court below, reported in 17 W. N. C. 309, it appears that the plaintiff's property abutted on Centre street.

In re Howard Street, 142 Pa. 601, decides that the act of 1858 is constitutional, and was in full operation in the city of Philadelphia on January 25, 1889, and does not touch the question under consideration.

It is claimed by the appellees that Mellor's Executor et al., v. City of Philadelphia, 160 Pa. 614, rules this case, and fully sustains the court below on the question of injury and damage. To this proposition the writer of this opinion, and the majority of this court do not assent.   The facts in Mellor v. Philadelphia as stated by the Reporter are as follows: " At the trial it appeared that the sixteen plaintiffs owned houses and lots on Trenton avenue, a narrow street running east and west along the Pennsylvania Railroad in Frankford.   Ten of the properties were between Orthodox and Margaret streets.   Six of the properties were on the west of Orthodox street.   The first group of ten properties had ingress and egress by Trenton avenue to enter Orthodox or Margaret street.   The second group of six properties had ingress and egress by Trenton avenue to Orthodox street or Oxford street, which was eight hundred and fifty feet farther west.   Councils of the city of Philadelphia, deeming it advisable to do away with grade crossings, passed an ordinance to lower the grade of Orthodox and Margaret streets, and thus carrying them under the railroad.   In carrying out this work, the streets were depressed about fifteen (15) feet, cutting off access by vehicles to and from the first group of ten properties, and also cutting off access by way of Orthodox street to the second group of six houses." In his charge, speaking of the western group of six properties, Judge Thayer said: " If you find that the cutting down of Orthodox street has materially impaired the facilities which the owners of these properties had before, getting into and out of their properties ; that Oxford cannot afford them the facilities which they had before because the road between Oxford street, in front of these houses, and Orthodox street is so narrow that wagons and carts cannot conveniently enter and turn round ; if you find that the property has been materially damaged by that, and that they have but one way of egress from their prop-

erties which is in itself a defective way, putting them to great inconvenience and affecting the value of the property, then I charge you that such an injury is within the protection of the constitution, and you should find for the plaintiffs for whatever damages the properties have actually sustained in consequence of the altered grade."

Under the facts thus stated and found, the jury assessed damages in favor of the owners of both groups of properties, on the principle that where access to properties is practically destroyed, a special injury results, though the property does not abut on the street or part of street vacated or changed.

In the case last above cited, two streets running at right angles to Trenton street were so changed in grade by depression as to render Trenton avenue impossible of access between the two streets, and on account of the narrowness of Trenton street on the city plan, it being so narrow between Orthodox and Oxford streets that wagons and carts could not conveniently enter and turn round, there was no difference in the degree of injury, and under the peculiar facts of the case, both groups of properties received special injury by being deprived of the means of egress and ingress.

In this case, no such facts exist. That the properties in question on Melon street were deprived of their outlet eastward, is undisputed. It is equally undisputed that Melon street, before the vacation, was an open, public highway from Ridge avenue to the westerly side of Ninth street; that it was forty-nine feet wide, including sidewalks, and twenty-five feet wide from curb to curb. And it is also undisputed that their outlet westward was not in any way impaired. The western half of the properties were some of them as near Tenth street as Ninth street, and the extreme easterly property was only about one hundred feet nearer Ninth than Tenth street. The most that can be said is that these property owners were inconvenienced in being deprived of an additional outlet, but under the facts in this case, they suffered no special injury which the general public did not suffer in common with them, and they are, therefore, not entitled to damages.

The distinction between the case of Mellor's Executor et al. v. Philadelphia, supra, and the case under consideration, is obvious. In the former case, the municipal authorities, when

they depressed the grade of Orthodox street, knew from the plan of streets in the vicinity that Trenton street was so narrow between Orthodox and Oxford streets that access by way of Oxford street was practically destroyed, and that a special injury to every property between these streets must result. This element of damage pervaded the case and was fairly submitted to the jury, at the trial, and the judgment was affirmed. In the case under consideration, the appellees were inconvenienced, and the facts clearly show that their access to the plan of general streets by way of Tenth street, is open, ample, unobstructed and unimpaired, and from the facts thus established, it follows that the appellees have sustained no special injury. In the former case, a *cul de sac* resulted that could not be used. In the case under consideration, a *cul de sac* also resulted, but no owner of property abutting thereon is deprived of free access to his property.

In Lawrence v. Philadelphia, 154 Pa. 20, we have the proposition of the owner of thirteen adjoining houses and lots, four of which fronted on Second street in the city of Philadelphia, four adjoining on Venango street, and five others adjoining on Cooper street. Second street crossed Venango street and Cooper street at right angles. The grade of Second street was raised nine feet, and this change of grade cut off access to the properties on Venango and Cooper streets, absolutely, by way of Second street. Under the facts thus stated, the court held that the plaintiff could recover damages to his property fronting on Second street, caused by the change of its grade, but could not recover as to his properties on Venango and Cooper streets. In the report of that case, the facts do not fully appear, but the plaintiff could have been denied the right to damages to his property on Venango and Cooper streets only, on the ground that he had free access thereto through other streets connecting with the general system of streets in the city of Philadelphia. Thus explained, this case fully supports the appellant's position.

It is urged by the appellees that because the jury of view gave special damages to each of the thirteen property owners, it therefore follows by implication that their finding was based upon some facts warranting the giving of such damages. But such implication is rebutted and must fall in connection with

the undisputed facts which the record discloses, to wit, that before the vacation, Melon street was an open, public highway, nearly fifty feet wide, and the outlet through this open highway to Tenth street was not in any way impaired by the vacation. Under this view of the case, it follows that the second, third, fourth, ninth and eleventh assignments of error must be sustained.

The fifth, sixth and seventh assignments of error are overruled. While the jury of view, under the terms of the petition filed in the court below, had no right to ascertain and report any damage caused by the vacation of Ninth street, yet, having done so, in connection with the damage caused by the vacation of Melon street, if we were to affirm the court below this court could order the filing of a proper and sufficient release on the part of the appellees as to all damage caused by the vacation of Ninth street so as to thoroughly protect the rights of the appellant.

In considering the eighth and twelfth assignments of error, we must first notice the character of the question submitted to the jury of view on the subject of benefits. By the provisions of the act of 1858, we have seen that the first duty of the jury of view was " to ascertain and report to the court what damages the parties claiming were entitled to; and second, to assess and apportion the same among and against such owners of land as shall be benefited by such opening, widening or vacating any such road or street."

This statutory provision, if followed, was a sure guide to the jury of view in assessing, apportioning and reporting benefits. They were commanded to ascertain the owners of land benefited and report the same to the court; like any other statutory submission, their award must be in conformity with the statutory requirements, and if it fails in that respect, it cannot be sustained. In their report, the jury found that all the land abutting on both sides of the portion of Melon street vacated, belonged to the Philadelphia and Reading Railroad Company. The jury further found " that in the construction of the Philadelphia & Reading Terminal Railroad and its necessary works, that company had entered upon and occupied a portion of Ninth street so stricken from the city plan, and also that portion of Melon street which has been stricken from the city plan, as

aforesaid." And further, "that the Philadelphia & Reading Terminal Railroad Company is specially benefited to an amount not less than $9,750."

Nowhere in the viewers' report does it appear that the Philadelphia & Reading Terminal Railroad Company was the owner of any land benefited at the time the report was made and filed. If that company was not the owner of land benefited, it was not liable to assessment for benefits; if it was, then it was the imperative duty of the jury to affirmatively find and report that fact to the court. Such is the command of the statute.

In Reitenbaugh v. Chester Valley R. R. Co., 21 Pa. 105, Mr. Justice WOODWARD says: "But to enable the court to determine in either case whether the viewers have confined their assessment of damages to the subject-matter provided for in the general law, or in special acts of incorporation, it is apparent the report should exhibit the grounds of the assessment."

In this case, the jury have reported that the Philadelphia & Reading Terminal Railroad Company is benefited, but they did not find another equally important fact prescribed by the statute, to wit, that the said company was the owner of land benefited. We are asked by the appellees to find the necessary ownership of land in the Reading Terminal Railroad Company from the viewers' report, by implication; if we do, the implication must be a necessary implication. Does it follow of necessity that because the appellant was in actual occupancy of a portion of Melon street vacated, it was therefore the owner of land as contemplated by the statutory provision? Whether the company is there in possession of the vacated street for one year or one hundred years, whether as lessee or licensee, does not appear. From the fact of occupancy, ownership does not follow by necessary implication.

It is also urged that from the fact that the jury found that the appellant was benefited in the sum of at least $9,750, therefore, by implication it follows from the finding of that fact that the company must have been the owner of land, or the jury would not have found it was benefited. Such a proposition answers itself, for the fact that the jury found the appellant benefited, in no way implies its ownership of land.

In Centre Street, 115 Pa. 247, the report of the jury stated that in consequence of the vacation of the street, the petition-

ers had received special damage, and that the land owned by the Pennsylvania & Schuylkill Valley Railroad Company in the locality of said portion of said street, had received special benefit from said vacation. This was held a sufficient description of property and ownership, and warranted the jury in assessing the benefits against the company. That case, however, is not an authority sustaining the position of the appellees; in fact, it is to the contrary. The assessment and apportionment of benefits not appearing to be against the owner of land in the report of viewers filed in the court below, said report therefore, cannot be sustained. The eighth and twelfth assignments of error are sustained.

The judgment is reversed and the report of the jury of view set aside, at the cost of the appellees.

OPINION BY RICE, P. J., dissenting, December 20, 1895:

The appellant's counsel contend that there cannot be any recovery by the claimants, because none of them was the owner of property within that part of Melon street which was vacated. They do not claim that they were not damaged—and in the face of the report of viewers, unappealed from, cannot do so—but do contend that there must be not only damage, but injury in the legal sense must exist.

To this latter proposition, I give my unqualified assent, but I am not prepared to concede that the loss which the claimants have sustained in consequence of the closing up of Ninth street and the eastern end of Melon street, is damnum absque injuria.

The right to compensation for loss sustained by a property owner in consequence of the vacation of a street is, in Pennsylvania, purely statutory. It was clearly decided in Paul v. Carver, 24 Pa. 207, that the legislature has power to vacate streets and highways which, in its judgment or that of the municipal authorities to whom the power is delegated, are useless, inconvenient or burdensome, and this without providing compensation to the owners of land incidentally injured.

Judge BLACK said: " Surrendering the right of way over a public road to the owners of the soil is not taking private property for public use, and the proprietors of other lands incidentally injured by the discontinuance of the road are not entitled to compensation."

This doctrine was in harmony with the ruling in O'Connor v. Pittsburg, 18 Pa. 189, that "the constitutional provision for the case of private property taken for public use, extends not to the case of property injured or destroyed; but," added Chief Justice GIBSON, "it follows not that the omission may not be supplied by ordinary legislation."

The injustice which constantly resulted from the ruling in this case—an injustice which Chief Justice GIBSON thought so great that it ought to be remedied by appropriate legislation—was to some extent provided against by section 10, art. I, and section 8, art. XVI, of the constitution of 1874; but it has been held, for reasons which in no way affect the present case, 'that an injury caused by the vacation of a street is not within these constitutional provisions. No private property is "taken or applied to public use" within the meaning of the section first referred to, or "taken, injured or destroyed by the construction or enlargement of their works, highways or improvements," within the meaning of the section last mentioned: McGee's Appeal, 114 Pa. 470.

But it is too plain for argument, that a property owner may suffer injury in consequence of the vacation of a street, not only different in degree, but different in kind, from that suffered by the general public. It is the same kind of an injury which he suffers from a change of grade; and, upon the same principles of justice and equity which were recognized in O'Connor v. Pittsburg, and which led to the adoption of the constitutional provisions above referred to, the state, although as the sovereign having power to inflict it without compensating him, may give such compensation, and provide for its payment by the state, or the municipality, or its apportionment amongst the persons or properties benefited. This was expressly decided in the construction of the very act under which the present proceedings were had: In re Centre Street, 115 Pa. 247.

"That the commonwealth was under no constitutional obligation to pay for the damage caused by vacating a street was decided in Paul v. Carver, 24 Pa. 207, and is so held under the present constitution: McGee's Appeal, 114 Pa. 470. But it has never been held, nor, so far as I am aware, seriously contended, that the legislature might not put such obligation upon the commonwealth or its agents by statute. The princi-

ple of compensation was extended by the present constitution so as to include in certain cases, not only property taken, but property injured. This provision might have been, and, to some extent was, in fact, anticipated by statutes providing for such compensation by assessments in the nature of special and local taxation:" Howard Street, 142 Pa. 601; Hare v. Rice, 142 Pa. 608: MITCHELL, J.

The legislature, in the exercise of its undoubted power, having guaranteed compensation for injury caused to private property by the vacation of a street, the question arises whether the right is limited to properties abutting on the portion of the street vacated. No one could, or does, contend that an unqualified affirmative answer to this question would be justified upon any principle. If, for illustration, Ninth and Tenth streets had been vacated, we think no one would say that the properties of the claimants abutting on that portion of Melon street lying between the two streets vacated would not suffer injury in a legal sense, or that the legislature did not intend to give compensation for the kind of injury which those properties would sustain. Undoubtedly, the legislature might refuse compensation in such a case, but has not done so.

But it is said that, in the case supposed, access to the property of the claimants would be wholly destroyed, while in the case in hand access by way of Ninth street only is taken away. But why should the statute be construed to give a right to compensation in the one case, and not in the other? What authority is there for saying that a claimant must show that he has been wholly deprived of access to his property, in order to entitle him to recover damages? Take the case in hand—the claimants may still go to and from all parts of the city by way of Tenth street, but are now compelled to go further to reach points to the eastward. This is an inconvenience, and, by the diversion of travel, may cause a depreciation in the value of their property; but it is generally held to be the same kind of inconvenience as that which all the inhabitants of the city, traveling that way, must suffer. It is an interference with the right of passage over the street which was before enjoyed, and is not of itself a legal wrong for which a private suit at common law could have been sustained.

It may be conceded that it is not an injury for which the

claimants would be entitled to recover damages under the statute; but, in addition to the right of passage which they enjoyed in common with the general public, was their right or interest in the street as a mode of access to their properties, and there may result, from a destruction or impairment of access, a special injury which would not be sustained by the other members of the general public. It would seem to be manifest that the conversion of an open highway connecting with another street into a cul de sac would, as to the properties thus deprived of one mode of ingress and egress, be evidence of a special injury, possibly differing in degree, but not in kind, from that resulting from closing up both ends of the street.

A variety of special circumstances—the width of the street upon which the properties abut, the grade, the kind of traffic, the distance—would enter into the determination of the amount of damages sustained. In some cases, they might be very trifling; but cases may very readily be imagined where they would be very serious; and I am not prepared to say that the mere fact that the properties do not abut on the portion of the street vacated would be conclusive upon the legal question—whether such an act would be an injury.

The learned counsel for the appellant frankly concede that the question is a new one in Pennsylvania. Therefore, we are not prevented by any authoritative precedents from giving that interpretation to the statute which will carry out the manifest intention of the legislature to remedy an injustice, which Paul v. Carver showed was possible under the law as it stood before.

I agree that some well-defined principle ought to control the assessment of damages; but there is a difficulty in laying down a general rule applicable to all cases, and the rule contended for seems to derive its chief support from the supposed inconveniences that would result, if it is not adopted.

This argument is not without force, but it seems to me that it is given too much weight. It is said if the rule contended for is not established, where will be the limit to claims for damages? Questions like this can be addressed with much more force to the legislature than to the courts; but, after all, the difficulties which would arise from a more liberal interpretation of the statute are more imaginary than real; they are not

greater than those which might have been, and indeed were, anticipated from the introduction into the fundamental law of the principle of compensation for the injury and destruction, as well as the taking, of private property in the exercise of the right of eminent domain. It is not to be supposed that the legislature were ignorant of the difficulties which are now urged upon our consideration, but they were not of sufficient gravity to deter them from enacting a law broad enough in its terms to secure compensation to these claimants, if, in fact, they have suffered substantial injury of a special nature. It is as broad as the constitutional provision; the injury is of the same kind as that caused by a change of grade; there is no reason for a stricter rule in one case than in the other, and there is no authoritative decision which requires us to make a distinction.

If I am correct in this, then the language of Chief Justice STERRETT, in Mellor, Ex'r, v. Phila., 160 Pa. 614, construing the constitutional provision and applying it to a case of damages caused by a change of grade, might appropriately have been written for this case. "Defendant's contention was that this provision is inapplicable to any of the cases under consideration, because neither of the properties fronts or abuts on either of the streets, the grade of which was changed. This would, indeed, be a very narrow and unreasonable construction of the words above quoted, especially in view of the history and object of the constitutional provision. . . . There is nothing in the phraseology of the section that can be even tortured into a limitation of its provisions to property fronting or abutting on the particular work, highway or improvement, by the construction or enlargement of which said property was injured or destroyed. The section in question cannot be thus narrowly construed without reading into it words which are not in it, and were never intended to be there."

The case is like this in so many parts that it seems to me that it might be regarded as ruling it. There, access to the properties by way of Orthodox street was destroyed by lowering the grade of the latter street, but Trenton avenue, upon which the properties abutted, and Oxford street which it intersected, remained as before. Here, access to the properties by way of Ninth street was destroyed by the vacation of that street and the eastern end of Melon street; but the portion of the latter

street on which these properties abut, and Tenth street, which it intersects, are unchanged. The outlet in that direction remains as before. In neither case was access to the properties wholly destroyed, but in both cases, the conversion of the highway in front of them into a blind street was evidence of an impairment of access to the properties which might be proper to submit to a jury, under appropriate instructions of the kind given in the cited case.

Whether the injury was as great in this case as in that, it is impossible to say without having a knowledge of all the facts, which would have been brought before the court if an appeal had been taken, as was done in the case cited, but cannot come before the court on exceptions to the report. It is true, we have the undisputed facts—that the properties do not abut on the part of the street vacated; that the street is nearly 50 feet wide, and that the outlet to the westward is the same as before. If these facts are sufficient in law to base a conclusion that the claimants have not sustained an injury which would entitle them to recover the damages allowed by the viewers; if, in other words, we can say, as a matter of law, that access to their properties has not been impaired, then the report ought to have been set aside. But this is what we must declare if we sustain the appellant's second, third, fourth, ninth and eleventh assignments of error, and I do not think we can do so and at the same time harmonize our decision with the just principle upon which a recovery was allowed in Mellor v. Philadelphia.

It is argued that an affirmance of the judgment of the quarter sessions in this case will be in the face of every authority upon the question. I have endeavored to show that such a ruling would be in entire harmony with the principle enunciated in Mellor v. Philadelphia, and, if time and space permitted, I think that it could be shown that it is not in conflict with the great weight of authority. It is true, some of the cases do lay down the rule that, where a part of a street is vacated, those whose property does not abut upon the vacated portion, and who have access to their property by the remaining portion of the street, cannot complain.

In some of the states, especially in Massachusetts, this rule has been adhered to with great strictness, but even there the principle was thus explained in one of the latest cases: "It is

not enough to show that the shop has suffered by the diversion of travel, or that the owner finds travel less convenient at a distance from his place, if the access to the system of streets remains substantially unimpaired:" Stanwood v. Malden, 157 Mass. 17. In that case the court said that the means of access were ample, and in the leading case in that state, Smith v. Boston, 7 Cush. 254, the court said: "The petitioner has free access to all his lots by public streets."

Are we prepared to declare in this case that access to the claimants' properties has not been impaired? Can the court say to these claimants "one opening to your properties is sufficient for your purposes, therefore no legal injury has been done to you by closing the other?" Could we say that, if their properties fronted on two parallel streets, or were on the corner of two streets, one of which was vacated? Is it not more in accord with sound principle to say that their right of access was not limited by the frontage of their properties, but extended to the two intersecting streets, and that it is for the jury to say whether, under all the circumstances, the claimants have suffered substantial damages in consequence of the closing of one mode of access?

A learned text writer, after reviewing the authorities, says: "It has been held that the vacation and closing of one street afforded no ground of complaint when access remained by other streets, but we should doubt this proposition as universally applicable:" Lewis on Eminent Domain, § 134.

Another writer says: "But the more liberal opinion is that the fact that access may be had from another direction, is not conclusive evidence that there is no legal injury to property:" Randolph on Eminent Domain, § 411.

He cites Gargan v. Louisville R. R. Co., 89 Ky. 211, as deciding that "if a convenient way be cut off, leaving only a decidedly inconvenient one, the abutting owner may have compensation."

If we leave out of consideration the cases which are based wholly on a construction of constitutional provisions, like ours, and cases where the statutes under consideration were held not to contemplate the recovery of consequential damages, it will be found that the cases in which it has been held that the rigid

rule, as stated by the appellant, applies, where the street was converted into a cul de sac, are very few, although I do not say that there is none.

In Chicago v. Union Building Ass'n, 102 Ill. 380, the part of the street to be vacated was three and one half blocks, one third of a mile distant, and the only injurious consequences were that persons passing from the claimant's property down the street, would have, on arriving at the obstruction, to go a little further and make a slight detour—precisely the same injury that would be sustained by every person having to pass by that route.

In St. Louis v. Flynn, 119 Ill. 200, the question decided was, as stated by the court, " Can the defendant, as matter of law, be held liable to the plaintiff for damages resulting from the vacation of streets and alleys between Front and Fourth streets—the vacation being in another block in the city than that in which plaintiff's property is situated? "

So, in Michigan, it was held that a petitioner had no interest, and was not entitled to notice of proceeding, because he could not reach the discontinued way without crossing a public street (Kimball v. Commissioners, 74 Mich. 699); but, where the discontinuance of a highway leaves the way to a landowner's house a cul de sac, he is directly interested in the proceedings, and is entitled to notice : Goss v. Commissioners, 63 Mich. 608.

In Whitsett v. Union Depot, 10 Col. 243, none of the lots of the plaintiff abutted on those portions of the streets or alleys vacated, but all were on other blocks ; hence the court properly held that " the access to and egress from his lot is not affected by the vacating ordinances passed by the city."

The same was the case in Glasgow v. City of St. Louis, 17 S. W. Rep. 743, and the court held that the case was not within the constitutional provision, because there was no physical interference with the plaintiff's property, and no right of easement connected therewith, or entrance thereto, was affected.

In the other Missouri case cited by the appellant (Bailey v. Carver, 12 Mo. App. 175), the point decided was that " the substitution of a deflected alley for a straight one does no more than change the direction of their exterior communication, and this being at a point beyond the confines of their property is as harmless to their absolute rights as if it were in any other part of the city."

The case was precisely the same in principle as those in which
the street vacated was in another block, and was put upon the
same ground, namely, that, being compelled to travel further
to reach other points, it was an inconvenience which the claim-
ants would suffer in common with the general public.

Neither of the Minnesota cases cited (Shaubut v. Railroad
Co., 21 Minn. 502, and Brakkin v. Railroad, 29 Minn. 41) is
parallel to the present one. The first is not, because the ob-
struction was in another block; and the second is not, because
access was wholly cut off. Both are in point, however, be-
cause they recognize the general principle, that the right of
access gives an abutting landowner a special interest in the
street, even beyond the limits of the frontage of his property.

The case of Coster v. Mayor, 43 N. Y. 399, is sometimes
cited in support of the proposition that the vacation and clos-
ing of one street affords no ground of complaint where access
remains by other streets, but a careful reading of that case, I
think, shows that it was decided upon a construction of the
statute which confessedly cannot be given to our statute,
namely, that it did not give the right to consequential damages.

It is sometimes said that the right of an abutting landowner
in an open street is coextensive only with the necessities of the
case; but this doctrine cannot be sustained upon any sound
principle, nor by the weight of authority where a statute, as
broad as ours, is in force.

In Buccleuch v. Metropolitan Board, etc., 5 H. L. 418, cited
in Randolph on Eminent Domain, § 411, the right of access to
the river Thames was held to appertain to every foot of the
adjacent land of the plaintiff, though access had been habitu-
ally gained at a single point only. The same principle was
held to apply where the tract in question abutted on more than
one street. The deprivation of access to one street is an injury,
although another street affords egress: Ft. Scott Ry. Co. v.
Fox, 42 Kansas, 490.

I have made this review of the cases, most of which were
cited by the learned counsel for the appellant, not to show that
they expressly decide that a recovery can be had in such a case
as this, but to show that it is not decided by the great weight
of authority that there cannot be a recovery.

Coming back to a consideration of the case upon general

principles, and assuming that a property owner can recover such damages only as are special to him, and that this includes only damages consequent upon a deprivation or impairment of access to his property, I would hold that the facts set forth in this report, whether taken singly or together, do not raise a presumption of law or of fact that the claimants have not suffered such damage, and the report being in due form is sufficient to sustain the assessment.

Is the omission of the viewers to report specifically that the appellant is an owner of land, benefited by the vacation, a fatal defect ?

In the Centre street case, 115 Pa. 247, it was decided that the assessment of special benefits, for the purpose of raising a fund to pay those who have been damaged by the vacation of streets, is a species of taxation, and within the power of the legislature. It was also held that, under the act of 1858 now under consideration, the assessment might be made against the owner of the land benefited personally. Chief Justice STER-RETT said : " While it is perhaps true that such assessments are generally against the property benefited, and not against the owner thereof personally, the fact that the legislature has authorized them to be made against the owner, as in this case, cannot affect the constitutionality of the law. The object in either case is to provide a mode of collecting the assessment, and that is wholly within the discretion of the legislature : Desty on Taxation, 286."

It is, nevertheless, true that the assessment can only be made against the owner of the land, and that the assessment cannot exceed the benefit to the land. Both of these facts should appear expressly or by necessary implication in the report; but it seems that an omission to describe the land is not a fatal defect: Center street, supra. But the ordinance annexed to, and made part of, the petition, and referred to in the report, contains this clause : " Provided that the Philadelphia and Reading Terminal Railroad Company shall pay all expenses and damages arising from the said revision, and that it shall enter into a contract with the city of Philadelphia, in a form to be approved by the city solicitor, covenanting to pay all such expenses and damages, and to indemnify the city of Philadelphia from any liability for, or on account of, the said revision."

It may be fairly inferred that the contract was entered into, in compliance with the condition, for the report states that the revision of the city plans contemplated by the ordinance was made and duly confirmed by the board of surveyors, and that the appellant, in the construction of its necessary works, had entered upon and occupied those portions of Ninth and Melon streets stricken from the city plan as aforesaid.

The report further sets forth " the vacation of Melon street on account of the closing of Ninth street, for the benefit of the Philadelphia and Reading Terminal Railroad Company, was part of a general scheme or plan for the revision of plans of the city streets in the vicinity of Philadelphia and Reading Terminal Railroad Company, made necessary by the building of its elevated railroad to its new terminal station at Twelfth and Market Streets, in the city of Philadelphia."

Under these circumstances, may not a fair presumption of such ownership of land as would make the appellant liable to assessment, arise from the occupancy of it, by works of the permanent character referred to in the petition and report?  It is said that no such presumption can arise, because the report shows that all the land abutting on that part of Melon Street, stricken from the city plan, belongs to the Philadelphia and Reading Railroad Company ; but it by no means follows that this is the only land which would subject the owner to assessment, nor am I convinced that the ownership contemplated by the statute must be in fee simple.

It appears, with sufficient certainty, that the appellant is in the actual occupancy of land which might subject the owner to assessment for benefits thereto, with works of a permanent nature ; namely, an elevated road connecting with its terminal station at Twelfth and Market streets ; that the ordinances were passed for the benefit of the appellant, and upon condition that it would pay the expenses and damages caused by the vacation of the streets; that it has actually received, and is in the enjoyment of, the benefits which were intended, and it may be fairly inferred that it has complied with the condition, by entering into the contract required by the ordinance.

These facts, taken together, take the place of a formal and specific averment of the ownership of land.   But, say the counsel for the appellant, the roadbed of a railroad company cannot

be assessed with benefits for such an improvement, and cite the sidewalk and paving cases in support of the proposition. But, as has been seen, this is not an assessment against the roadbed, but against the owner. The cases referred to were decided principally upon the ground that the improvements then under consideration could not, from their very nature, be a special benefit to the roadway of a railroad company, but the vacation of a street may be, and manifestly was, in this case, a benefit ; and, when we come to the question of ownership, it makes very little difference whether the appellant owns the roadbed in fee, or has only the right of way : Junction R. R. Co. v. Philadelphia, 88 Pa. 424.

I would, therefore, hold that the omission referred to in the assignment of error under consideration was not, under the circumstances, fatal to the report. In order to prevent misunderstanding, however, it should be stated that this is not put upon the ground that the contract referred to in the ordinance, even if entered into by the appellant, would entitle the claimants to recover damages, if their property is so situated that it has not, or could not, receive legal injury in consequence of the vacation of the streets in question. The fact is referred to simply in connection with the facts as to the occupancy of the land, as bearing upon the question raised by the assignment of error under consideration.

For these reasons, in connection with the reasons assigned by the majority of the court upon the other two questions raised in the case, I would affirm the judgment of the court below.

BEAVER, Judge, concurs in the foregoing dissenting opinion.

CONCURRING OPINION BY McCARTHY, J., January 15, 1896 :

The reasoning and conclusions of my learned brethren in reversing the action of the court below have my fullest concurrence, but I would go further than they and also reverse the action of the lower court in dismissing the second, third and fourth exceptions to the report of the jury.

This proceeding was begun by petition for a jury to assess the damages done by reason of the vacation of a portion of Melon street. The finding of the jury is " that the damage to the claimants' property upon Melon street is caused by the clos-

ing up of Ninth street and Melon street, thus depriving them of an outlet eastward by way of Ninth street to the general system of streets in the city of Philadelphia." This blending and confusion of two distinct vacations is material and fatal error. In the silence of the jury who shall say what proportion, if any, of the pecuniary damages which they afterwards award to the several claimants is due to the one vacation and what proportion, if any, is due to the other. Indeed, since the jury finds that the injury consists in depriving the claimants of "an outlet eastward by way of Ninth street to the general system of streets" is not the conclusion fully justified that the vacation of Ninth street is the sole cause of this injury, since that, without more, wholly deprives claimants of an outlet eastward? The fact is that although this proceeding purports to be for the vacation of Melon street, the question virtually submitted is whether claimants are entitled to damages by reason of the vacation of Ninth street, and it is because of their appreciation of this that the jury have shaped their finding as it appears in the report.

Nothing can be clearer on both reason and authority than that the owner of land abutting upon a highway has a double right in the easement thereof. He has first, the right of travel along, upon and across the highway, which belongs to him as a member of the public at large and is enjoyed by him in common with all other members of the public; he has secondly a right to use the highway as a means of approach to, ingress upon and egress from his land, the enjoyment of which is peculiar to him as owner of the land. For an interference with the first of these rights he cannot recover damages although he may feel the deprivation more keenly than others of the public at large. It is damnum absque injuria. On the other hand, if his special right of access, ingress or egress is injured or destroyed he may recover damages for that. In the present case this court has sustained the assignments of error to the dismissal of the exceptions directed to the point that unless the claimant is the owner of property abutting on the portion of the street vacated no damages can be awarded to him by reason of the vacation, by affirming the principle just stated, and the review of authorities in the opinion renders it superfluous for me to cite any of the very long line of decisions by which it is

established; but if the owner of land upon Melon street not abutting on the portion of the street vacated cannot claim damages for the vacation of Melon street itself because his special right of access, ingress and egress has not been interfered with, a fortiori, he cannot claim them for the vacation of another and different street. It is sufficient to mention the case of Lawrence v. Philadelphia, 154 Pa. 20, as an authority directly in point upon this position, but the principle already stated and so abundantly sustained by authority rules the question conclusively without more. The clear error of the finding of the jury is practically conceded by the counsel for the appellees who propose to cure it by the filing of "a release of damages for the vacation of Ninth street so as to preclude the possibility of a double recovery." It is, however, manifest that the filing of such a paper cannot cure the inherent vice of the finding. I would therefore sustain the fifth, sixth and seventh assignments of error and reverse the action of the court below in dismissing the exceptions upon which these assignments are based.