## Daughters of the American Revolution *v.* Schenley, Appellant (No. 1).

*Road law—Vacation of streets—Petition—Signing petition—Attorney in fact—Reservation in deed.*

An owner of nine and one half acres of land in the city of Pittsburg conveyed a small lot standing in the midst of the land on which is located the " Block House " an outpost of old Fort Pitt, to the Daughters of the American Revolution, reserving the right, however, to the grantor to represent the property in all proceedings looking to the vacation of certain streets. Subsequently an attorney in fact, for the owner of the land, signed a petition to councils for the vacation of the streets mentioned in the reservation in the deed. The letter of attorney authorized the attorney " to lay out lots in such form and fronting on such streets, lanes and alleys or areas as in his judgment may be advisable." There was no express authority to sign a petition for the vacation of a street. Subsequent to the action of councils on the petition, the owner expressly ratified her agent's act. *Held* (1) that the Daughters of the Revolution had no standing to question the authority of the owner's representative; (2) that even if the authority of the agent was not clear under the letter of attorney, the owner's ratification of his act was fully equivalent to precedent authority; (3) that the act of the owner was not a ratification of the ordinance, but merely of her agent's act in signing the petition.

While the appellate court will not go outside the record in a road case to ascertain if a finding of fact by the court below be correct, yet it may take the fact as found, and say that the conclusion of the lower court was not warranted by the law.

*Appeals—Road law—Vacation of streets—Act of May 16, 1891.*

Under the Act of May 16, 1891, P. L. 75, no appeal lies from an order vacating a street. The words " otherwise improving any street " do not embrace the vacating of a street.

Argued Nov. 4, 1902. Appeals, Nos. 136 and 137, Oct. T., 1902, by defendants, from orders of C. P. No. 2, Allegheny Co., April T., 1902, Nos. 529 and 530, quashing ordinances in

case of Daughters of the American Revolution v. Mary E. Schenley et. al.    Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Reversed.

Petitions to quash ordinances to vacate Fort street and Point alley in the city of Pittsburg.

SHAFER, J., filed the following opinion in the Fort street case.

This is a proceeding under the act of May 16, 1891, to determine the sufficiency of the petition to the councils of the city of Pittsburg, upon which an ordinance was passed for the vacation of Fort street.

Mrs. Mary E. Schenley is the owner of all the land abutting on Fort street, except a lot which was some years ago conveyed by her to the Daughters of the American Revolution, a corporation, for certain purposes, stated in the deed; which deed created a base fee in that corporation.    The deed of Mrs. Schenley to the corporation also contained a reservation to herself of the right to represent the property described in the deed in a petition concerning the vacation of the street in question, with a provision that in case any damages should arise from the vacation, that she should not be liable for the same, so far as concerned that property.

Mrs. Schenley is a resident of England, and Mr. John W. Herron has a power of attorney from her, which is of record in the recorder's office of Allegheny county, whereby he is authorized to do for her a considerable number of specific things. Sometime prior to the signing of the petition in question, Mrs. Schenley, by articles of agreement, agreed to sell some or all of the lands abutting on the street to Mr. F. F. Nicola.    The petition was signed by Mr. Nicola and by Mary E. Schenley by her attorney in fact, John W. Herron, and was sworn to by each of them.    At the time of the signing and presentation of the petition, and the passage of the ordinance, Mrs. Schenley had no knowledge of the transaction.    Sometime afterwards she heard of it, and was satisfied with the action of Mr. Herron in signing the petition.

The legal questions which appear to arise on this state of facts are first, whether the act in question gives jurisdiction to

this court in the case of a vacation of a street to inquire into
the signing of the petition by a sufficient number of qualified
petitioners; and second, whether the plaintiffs have standing to
object to the petition; third, whether the power of attorney of
Mr. Herron authorizes him to sign such a petition, and if not
whether the subsequent ratification of his signature by Mrs.
Schenley will cure the original want of power; and further,
whether in either event the signature of Mrs. Schenley's at-
torney in fact is sufficient to bind the Daughters of the Ameri-
can Revolution in respect to their land, under the reservation
in their deed.

The question of jurisdiction, discussed to some extent by
this court in the case of Ebe's Appeal, reported in 10 D. R.
367, 370, was one raised by the court, and not argued by
counsel, and the case was decided upon other grounds. In
that case we expressed an opinion that it is at least doubtful if
the provisions of the 10th section of the Act of May 16, 1891,
P. L. 75, gave an appeal to the court in the case of a petition
for the vacation of a street. The word "vacating" does not
appear in the section, and if a vacation is included in its provi-
sions, it must be under the head of "otherwise improving." It
is true, on the one hand, that the words appear to be taken from
the 8th section, which speaks of "grading, paving, macadamiz-
ing, and otherwise improving," and may, therefore, be well in-
terpreted to refer to improvements of a similar kind; yet it is
also true that the vacation of streets is, in the same act, more
than once spoken of as an improvement, and the word "im-
provement" is used as a generic word, including not only the
change of the physical nature of the street, rendering it more
convenient than before, but also the opening, widening, extend-
ing and vacating of streets. This use of the word in the act
was not observed in the discussion in the Ebe case. If the act
be interpreted to cover all the "improvements" authorized and
regulated by the act, including the vacation of streets, it will
remove an apparent anomaly. It is not apparent why a peti-
tion of a certain kind should be required for all these improve-
ments, and the determination of the question whether the peti-
tion is in fact of that kind, should be different in different
cases.

As to the standing of the appellants as owners of abutting

lands we think there can be no doubt, as they have at least a base fee in the lands, and notwithstanding the reservation in their deed are liable for damages.

That Mr. Herron's power of attorney is not sufficient to authorize him to sign such a petition for Mrs. Schenley is, we think, very plain. We can find nothing in it which even approaches such a power. The evidence is, however, that Mrs. Schenley afterwards ratified his act. In transactions in which the public is not concerned, and no third person's rights are involved, no doubt the ratification would amount to a previous authority, but the power of councils to pass a valid ordinance depended on the petition, and it cannot be that the validity or invalidity of the legislation can be made to depend upon the subsequent action of a private person at some indefinite time thereafter. If the petition was not sufficiently signed when acted upon by councils, their action was wholly void, and cannot be brought to life by the ratification of an act which was a prerequisite to it. Neither do we understand how the general conduct of Mrs. Schenley in not objecting to the previous acts of her representative in regard to streets gives Mr. Herron any greater authority. There might be something in it if it were not for the fact that he had a minutely specific power of attorney, and professed to act under it; besides, it does not appear that Mrs. Schenley had any specific knowledge of the fact that her representative had signed such petitions for her at any time.

A further matter to be considered is what is meant by the reservation of the deed of the right to " represent the property " conveyed to the plaintiffs. The act calls for the signatures of the abutting owners ; is Mrs. Schenley to be deemed the abutting owner of all the land, including that of the plaintiff, because she reserved the right to represent the property in such a petition? We are of the opinion that the utmost she could be said to have is a power of attorney to represent the plaintiffs, irrevocable because coupled with an interest. If this be correct she could not sign such a petition on behalf of the plaintiffs by an attorney in fact, there being no power of substitution in her own authority to act for them.

We are clearly of opinion that the petition is not in fact signed by the requisite number required by the act. As to the question whether there is an appeal in the case of a petition for

the vacation of a street, we think the law to be doubtful. If we hold the act to extend to the vacation of a street, and declare the ordinance invalid, there can be no doubt that an appeal will lie from such decision. From a contrary decision it is possible that no appeal would lie; we prefer, therefore, to resolve the doubt in favor of the petitioners.

It appearing to the court, therefore, that the ordinance in question was not petitioned for by the requisite majority in interest and number of the owners of property abutting on the line of the proposed improvement, the ordinance founded thereon is quashed.

The costs to be paid by the city of Pittsburg.

*Errors assigned* were the orders quashing the ordinances.

*William W. Smith,* with him *T. D. Carnahan,* city solicitor, for appellant.—The courts have no jurisdiction of an appeal to determine whether or not an ordinance vacating a street or alley passed by councils of the city of Pittsburg was petitioned for by a majority in interest and number of owners of property abutting on the line of the street or alley vacated.

Vacating a street is a proceeding of a totally different nature from opening or improving a street, and prior to the act of assembly approved June 14, 1887, P. L. 386, there could be no recovery of damages by a property owner for the vacation of a street or alley in the city of Pittsburg: Paul v. Carver, 24 Pa. 207; McGee's App., 114 Pa. 470; Wetherill v. Penna. R. R. Co., 195 Pa. 156; Morris v. Philadelphia, 199 Pa. 357.

Prior to the act of assembly, approved May 16, 1889, P. L. 228, no law required a petition of abutting property owners in order to vacate streets or alleys in the city of Pittsburg, and the act of 1889 provided that the decision of councils, that the petition was signed by the requisite number, should be conclusive.

Petitioners have only such right of appeal from the decision of councils as the act of 1891 gives them: Scranton v. Jermyn, 156 Pa. 107; Erie v. Bootz, 72 Pa. 196; Diamond Street, 196 Pa. 254; Ebe's App., 31 P. L. J. (N. S.) 361.

Upon the facts set forth in the petitions filed in court by appellee, it is not a person interested in the vacation of either

Fort street or Point alley, therefore it has no standing in any court to raise this question whether or not these petitions to councils of the city of Pittsburg were signed by the requisite majority in interest and number of owners of abutting property: Diamond Street, 196 Pa. 254; Melon Street, 182 Pa. 397.

Under the power of attorney set forth in the petitions filed by the Daughters of the American Revolution of Allegheny county, Pennsylvania, John W. Herron had authority to sign the petitions to councils of the city of Pittsburg for ordinances vacating Fort street and Point alley, as representing all the property abutting thereon, with the same legal effect as if signed by Mrs. Schenley personally, therefore, the said petitions to councils were signed by the owner of all the abutting property and are valid.

*John Reed Scott,* with him *S. W. Childs* and *J. H. White,* for appellee.—Under the Act of May 16, 1891, P. L. 75, and the amending act of May 22, 1895, P. L. 106, an appeal lies to the court of common pleas to determine whether or not an ordinance vacating a street or alley was petitioned for by a majority in interest and number of owners of property abutting on the line of the proposed improvement: Diamond Street, 196 Pa. 254; Union Alley, 9 Pa. Dist. Rep. 209; Mount Pleasant Ave., 171 Pa. 38; Spcer v. Pittsburg, 166 Pa. 86; Woodland Ave., 178 Pa. 325; Hare v. Rice, 142 Pa. 608.

The appellee, under its deed from Mrs. Schenley, is a person interested within the meaning of section 10 of the act of 1891.

The power of attorney of Mary E. Schenley to John W. Herron does not contain authority to said Herron to sign the petitions to vacate Fort street and Point alley upon which the ordinances in question were based.

A ratification by Mrs. Schenley is ineffective to give life to the ordinances because the act of 1891 itself fixes the condition of the petition at the time of presentation to councils as a criterion upon which it must be judged: Section 10 of said act, P. L. 75.

OPINION BY MR. JUSTICE DEAN, January 5, 1903:

Mary E. Schenley of London, England, is the owner of many

pieces of land in and about the city of Pittsburg. One of
these is what is known as the " Point property " being about
nine and one half acres, at the junction of the Allegheny and
Monongahela Rivers. It is bounded on the east by Third
street, and on the north, west and south, by Duquesne Way
and Penn avenue. On a part of this nine and one half acres,
is what is known as the " Block House," an outpost of old
Fort Pitt; the fort itself has long since disappeared; the block
house is twenty by thirty feet and about twenty-five feet in
height. Mrs. Schenley, by deed dated March 15, 1894, con-
veyed the block house with the tract of land one hundred feet
by ninety, on which it stood, to the Daughters of the Ameri-
can Revolution a patriotic corporation, for the nominal con-
sideration of $1.00, stipulating, however, that if used for any
other purpose than that of maintaining and preserving the
" Block House " it should revert to the grantor and her heirs ;
and further, the grantor reserved the right to represent the
property in all proceedings looking to the vacation of Fort or
First street and Point alley. The significance and value of
this reservation is indicated by a mere glance at the plot of
the nine and one half acres ; the one hundred by ninety feet
plot about the middle of which stands the old " Block House "
with twenty-five feet of clear space on every side of it; at its
length one hundred feet, it extends a few feet over on to First
street and slightly over on to Point alley on the other side ;
all the other part of the nine and one half acres is around and
about it and is the property of Mrs. Schenley. Of course, for
the improvement of her other property by the opening or vaca-
tion of streets and alleys it is of the highest importance, that
she should have an influential voice. If the donee of the
small " Block House " piece of land had the right of a land-
owner to obstruct public improvements in that locality, all her
other land might be made less valuable. This was the situa-
tion in the fall of 1901, at which time Mrs. Schenley sought
to improve the " Point " property, and to that end, desired the
vacation of certain streets and alleys, so that the property
would be eligible for the kind of improvements she contem-
plated ; thereupon petitions were presented to city councils
to pass ordinances vacating two streets and two alleys running
through the property, among them First street or Fort street

and Point alley.   These petitions were signed by Mrs. Schen-
ley, by her attorney in fact, John W. Herron, also by Frank
Nicola, who had an agreement with Mrs. Schenley to purchase
part of the land.   The petitions, on their face, thus represented
the owners of every foot of property abutting on the streets
to be vacated, that is, assuming that Mrs. Schenley, under the
reservation in her deed to plaintiff, had authority to represent
it in such proceedings.   Ordinances vacating the streets were
duly passed by councils, signed and approved by the city re-
corder as required by law.   The Daughters of the Revolution
thereupon presented a petition to the court of common pleas,
praying the court to quash the ordinances vacating Fort street
and Point alley on the ground that John W. Herron had no
authority from Mrs. Schenley to sign for her the petitions to
vacate, and that leaving her out as an owner of abutting prop-
erty, the petition was not signed by a majority of the property
owners in interest and number abutting on said streets.   The
court ordered notice to be served upon all of defendants to
appear; all did appear by counsel and denied the averment, of
fact in the petition and further denied the jurisdiction of the
court to entertain the appeal.   The court, on hearing, found
as a fact, that Mr. Herron had no authority from Mrs. Schen-
ley to sign the petition, and further affirmed its jurisdiction
to entertain the appeal, and thereupon entered this decree;
"It appearing to the court, therefore, that the ordinance in
question was not petitioned for by the requisite majority in
interest and number of the owners of property abutting on
the line of the proposed improvements, the ordinance founded
thereon is quashed."

Leaving out of view for the present, the question of jurisdic-
tion, it is palpable, as concerns substantial merit, that the decree
is founded on the baldest technicality.   In the deed of Mrs.
Schenley to the Daughters of the Revolution of the 190 feet and
the "Block House" after expressing the nature of the gift, as
one for patriotic and historical purposes and her desire to aid and
assist the Daughters of the Revolution in carrying out their
patriotic purpose, she expressly stipulates as follows: "Subject
to the right of the party of the first part (Mrs. Schenley) to
represent said above described real estate in all proceedings
looking to the opening of O'Hara alley, the purpose of the

party of the first part being to retain, reserve and not part with the right to petition the city of Pittsburg in behalf of said real estate to open O'Hara avenue and to vacate said Fort street and Point alley, and she hereby reserves the said right to herself, her heirs, executors and administrators, without liability, however, for any assessment of benefits on said real estate by reason of said opening or vacation." This deed is made part of the petition to quash and therefore part of the record in the court below, as is also Mrs. Schenley's power of attorney to Mr. Herron, in which is this clause, " the said John W. Herron is also hereby authorized and empowered to lay out lots, in such form and fronting on such streets, lanes and alleys or areas as in his judgment may be advisable." This is the only written authority he had at the time he joined in the petition to vacate. It was evidently a right to establish streets and alleys on the land. Afterwards, however, Mrs. Schenley expressly and formally ratified his authority to sign the petition. We think it clear, that under the reservation in the deed, the appellee had no standing to question the authority of Mrs. Schenley's representative ; she could then and could now question it if she chose ; the city legislature, before acting, might have demanded an exhibition of the authority, but the Daughters of the Revolution by acceptance of the deed with the reservation have no such interest as authorizes them to represent either Mrs. Schenley or the city, in questioning the agent's authority. The court below decides that the power of attorney to Mr. Herron was not so explicit as to cover the act of signing the petition to vacate, and although she swears in her deposition, " he had full authority from me to sign in my name the petitions," yet on its own interpretation of the written power, narrows it so as to exclude any such authority, not heeding the rule, that in case of even doubtful and ambiguous writings, the interpretation put upon them by the parties to them, will be adopted by the courts. The court concedes that subsequent to the action of councils on the petition, Mrs. Schenley expressly ratified her agent's act, but this the judge argues was too late because the validity of a public ordinance cannot be made to depend upon the subsequent action of a private person. This reasoning confounds her ratification of the act of her agent in representing her on the petition with a ratification of the ordinance ; to the validity

of this last her ratification was not necessary; it was a perfectly valid ordinance without her consent; she only ratified the act of her agent, and her ratification of his act in signing the petition, even if he had no authority when he signed, was fully equivalent to precedent authority. "The adoption of a contract made on our behalf by someone we did not authorize is a ratification and relates back to the execution of the contract:" Hare on Contracts, 272.

If the unauthorized act involved a crime or was a transaction opposed to public policy, it could not be ratified at all. In discussing this point on which the decree of the court below is solely based, we do not overlook the fact that this appeal is in substance a writ of certiorari, and that on review we cannot go outside the record. But here as part of the petition and record are brought up, the deed, the power of attorney and the averment that Mrs. Schenley did not sign the petition to councils, which petition is part of the record. The learned judge in substance, finds as a fact that Mrs. Schenley did sign the petition, though by his interpretation of the law his conclusion is that she did not. His decree is not in accordance with the facts of record but in the teeth of them. We would not go outside the record to ascertain if his finding of fact be correct; we take the fact as he finds it and say his conclusion was not warranted by the law. And this we have jurisdiction to do under the law as announced in the Diamond Street case, 196 Pa. 254, and the authorities there cited.

But we do not care to rest the decision on this ground alone; appellant raises another question which is broader, and may rule other cases which will naturally arise under the act of May 16, 1891, the act under which the petitions were framed and on which councils acted. As we said in the Diamond Street case, where the statute does give the right of appeal, "The jurisdiction of the court below was purely statutory. The legislature might have conferred on councils the right to widen the street without being first petitioned to do so by a majority in interest and number of property owners; it might have stopped just there, but it went further and not only made the petition a condition precedent but gave a right of appeal to the common pleas within sixty days by anyone interested. The statute, however, gave no further remedy to the discontented

property owner." It is argued by appellants in support of their first assignment of error that while the act authorizes an appeal to the courts from the action of councils in enacting ordinances for opening, widening and improving streets, it is silent as to ordinances vacating streets, and, therefore, the court below was without jurisdiction on this appeal because none was given by the statute. In statutory proceedings it has been ruled in very many cases that there can be no appeals to the courts from the action of municipal legislatures except such as are allowed by statute. Section 10 of the act of 1891 expressly gives the right of appeal to abutting owners from ordinances "opening, widening, straightening, extending, grading, paving, macadamizing or otherwise improving any street or alley." Not a word is said about an appeal from ordinances vacating streets. It is argued by appellee's counsel that the words "otherwise improving" would embrace the vacating of a street. They do not convey that meaning to our minds, and were doubtless inserted to meet the ever growing new methods of paving, some of those then well known being enumerated; if the act were to be passed to-day, it is probable asphalting would have been named; the word "vacating" could as easily have been inserted as the words opening, widening, etc., altogether eight words, but it was not. "Vacating" is not suggestive of improvement, but of abandoning, abolishing or destroying. We do not think the words "otherwise improving" within any reasonable interpretation give the right of appeal for vacating. The act contains twelve sections, and is very comprehensive. It expressly gives the right of appeal only in the 10th section, and as we think intentionally, omits giving it there from ordinances vacating streets.

The legislature was doubtless aware of the law as it then stood with reference to this particular exercise of municipal power. The right of appeal on assessment of damages for private property taken for public use by municipal and other corporations and the right to a trial by jury to either party according to the course of the common law are guaranteed by the 8th section of the 16th article of the constitution. But whether in any given case private property has been taken, and the use to which it is sought to appropriate it is a public one, are necessarily judicial questions to be determined by the courts; and this is

the declared law in all the states and in the United States courts. The facts here do not, as we have more than once decided, bring the case under the section of the constitution referred to.

In Paul v. Carver, 24 Pa. 207, this court decided, that the legislature had the power to vacate a public street without the consent of the abutting owners; that such an act was in no sense of the word a taking of private property for public use, but was nothing more than a surrender of the public right of way to the owners of the soil. In McGee's Appeal, 114 Pa. 470, it was held that the power of the legislature to vacate streets and to invest municipal corporations with the same power was not restricted by the constitution. The same was held in Wetherill v. Penna. R. R. Co., 195 Pa. 156. In this last case Justice MITCHELL in rendering the opinion of the court says : " But vacating a street takes no property from anyone. It merely restores to abutting owners their portion of the land freed from the servitude of the public way. There is no constitutional right to damages, even on the ground of injury under the present constitution."

As under the law thus established the abutting owner could not be damaged in his property by the vacation of a street or highway, he had no tangible interest which gave him a right of complaint; a sentimental interest or artistic taste might be shocked by the closing up of an ancient street or highway, but this affected no property right and the complainant was not given the rights of an appellant. The legislature by the act of 1891 adopted no new rule when it did not confer the right of appeal for vacation of a street on the abutting owner; it merely accepted the law as it stood; he was not damaged and therefore had nothing to appeal from. We think the court had no jurisdiction to entertain the petition, and even if it had on the record, the decree was erroneous ; therefore the decree of the court below in Nos. 136 and 137, October term, 1902, are both reversed and the petitions to the court of common pleas to quash ordinances vacating Fort street and Point alley are both dismissed.