## Upsal Street.

*Road law—Vacation—Vacation of street—Laches.*

Where a person files a petition for the appointment of viewers to assess damages caused by the vacation of a street, and being in doubt as to whether such damages are recoverable in law, has the jury continued successively for two terms, and thereafter takes no further step for six years, when he secures the appointment of a new jury under the original petition, the award of such jury assessing benefits against another owner who had no notice of appointment of the new jury, cannot be sustained.

Argued Oct. 18, 1901.   Appeal, No. 153, Oct. T., 1901, by Joseph Hauber, substituted trustee for the estate of Gottlieb Hauber, deceased, from order of Q. S. Phila. Co., C. P. No. 3, Sept. T., 1891, No. 00, refusing to confirm award of jury of view in case of Vacation of Upsal Street.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions of award of road jury.
The opinion of the Superior Court states the case.

*Error assigned* was the order of the court.

*Walter C. Rodman,* for appellant.—An examination of the road cases shows that the practice of appointing a new jury under an old petition is well recognized, usual and regular : Charleston Road, 2 Grant, 467 ; Towamencin Road, 10 Pa. 195 ;

Franconia Twp. Road, 178 Pa. 316 ; West Goshen Roads, 7 Pa. C. C. Rep. 250.

Under the circumstances of the case the cause did not die : Hemphill v. McClimans, 24 Pa. 367 ; William Street, 7 Pa. Dist Rep. 1 ; Wetherill v. Penna. R. R. Co., 195 Pa. 156 ; Ins. Co. v. Haws, 20 W. N. C. 370 ; Lynn v. McMillen, 3 Penrose & Watts, 170.

That the city solicitor was rightfully in control of the case, and was representing the whole defense, appears from a consideration of the cases which have established the principle, that street vacation proceedings are in every respect the same as opening or widening proceedings, so far as concerns the duty of the city and its counsel in connection therewith : Vacation of Howard Street, 142 Pa. 601 ; Hare v. Rice, 142 Pa. 608 ; Melon Street, 192 Pa. 331.

*George Stuart Patterson*, for appellee.—Where a jury of view appointed to assess the damages and benefits arising from the vacation of a street under the Act of April 21, 1858, sec. 6, P. L. 385, have neither been legally continued nor have filed their report at the next term of court, the court has no power subsequently to appoint a new jury under the original petition. Such new jury can only be appointed in a proceeding de novo, i. e., upon the filing of an original petition in a new case : Knox Street, 12 Pa. Superior Ct. 534 ; Snowden Road, 3 Grant, 62 ; Byberry Road, 6 Phila. 384 ; Road in Salem Twp., 103 Pa. 250 ; Road in Indiana County, 51 Pa. 296.

The statute of limitations bars the appointment of and assessment of damages and benefits by such new jury when the petition for its appointment is filed more than twelve years after the vacation of the street, and more than six years after the appointment of the original jury : Landes v. Norristown Borough, 21 W. N. C. 212 ; Curcier's Estate, 28 Pa. 261 ; Jones v. Orum, 5 Rawle, 249 ; McClung v. Fryer, 15 Pa. 293 ; Harris v. Dennis, 1 S. & R. 236 ; Centre Street, 115 Pa. 247.

OPINION BY ORLADY, J., January 20, 1903 :

This appeal is from the decree of the court of quarter sessions setting aside a report of viewers appointed to assess damages caused by the vacation of Upsal street and by the confirmation of a plan of resurvey.

From the record it appears that pursuant to an ordinance of April 17, 1856, the board of surveys of the city of Philadelphia made a resurvey of the plan of the old borough of Germantown, which resurvey placed Upsal street on the city plan; this was confirmed by the proper authority, on March 29, 1866.

On October 11, 1876, a lot of ground, including the bed of Upsal street as laid out on the plan, but which had not been actually opened, was granted and conveyed by the then owner to the city, although the deed therefor was not recorded until February 20, 1899.

By an ordinance of January 10, 1885, the department of surveys was authorized to revise the lines and grades of a part of Germantown embracing Upsal street, and a plan that struck off and vacated the part of Upsal street affected by this proceeding, prepared in conformity with the ordinance, was confirmed by the board of surveys on September 28, 1885.

On September 9, 1891, the present appellant presented his petition to the court of quarter sessions for the appointment of a jury of view to assess the damages alleged to be caused by this vacation, and on September 10, 1891, a jury was appointed. The docket entries show that on December 5, 1891, this jury was "continued and reappointed for a further space of three months," and that on March 4, 1892, the jury was "continued for another three months from March 5, 1892." The next docket entry is made on June 4, 1898, when Joseph Hauber presented his petition to "continue said jury nunc pro tunc for a further period of three months from the time of the decree, and if any of them be deceased or removed that the court may appoint others in their place; such jury to proceed forthwith to ascertain and report to the court as to the damages suffered by reason of the vacation of said street and the striking off the same from the said plan." The city of Philadelphia filed an answer denying that the revision of the said plan constituted a vacation of Upsal street and protested against the court continuing the jury nunc pro tunc. January 31, 1899, the appellant's petition was amended by leave of court, with agreement of the city, so as to pray for the appointment of a new jury under the original petition instead of the continuance nunc pro tunc of the former jury, and on April 7, 1899, a new jury of view was appointed.

After a number of continuances and proceedings in the court below, the present appellee appeared and intervened as the owner in fee of certain properties abutting on that portion of Upsal street alleged to have been vacated, and prayed that the petitions under which the jury had been appointed should be quashed, which prayer was refused by the court. On March 30, 1901, the jury of view awarded $1,670 as damages to Joseph Hauber, trustee, and assessed the same as benefits against the property of the Philadelphia, Germantown and Chestnut Hill Railroad Company.

The appellee filed exceptions to the report of viewers, alleging:

"First. The report of the jury is contrary to law.

"Second. That the court had no jurisdiction to appoint the jury of view, as the proceeding was legally ended in June, 1892, by reason of the failure to have the jury originally appointed under the petition in the cause, and then in existence, to file their report or be continued."

"Fifth. The cause of action, if any, by reason of the vacation of Upsal street, occurred more than six years before the filing or the supplemental petition of June 4, 1898, under which the present jury was appointed; and no damages can, therefore, be awarded or benefits assessed by reason of such vacation."

After full argument the foregoing exceptions were sustained by the court, a number of others were dismissed, and the report of the jury was set aside on June 5, 1901. The appellant's exceptional delay in the proceeding is stated by him to have been due to his belief "that the state of the law was doubtful as to whether the effect of striking a street from a city plan was or was not equivalent to a vacation and entitled the abutting owner to damages, and by recognizing the uncertainty of the law on the subject as heretofore understood in the profession, the proceedings were suffered to rest by reason of that uncertainty."

From March 4, 1892, to June 4, 1898, no step was taken by this appellant to speed his cause, and the reason he assigned cannot be considered a sufficient one to excuse his laches. The case is to be treated as if the court had refused to appoint the viewers on April 7, 1899, for the same reasons that the report of the jury of view was set aside on June 5, 1901.

When the petition was presented for the continuance nunc pro tunc of the first jury, as well as when the new jury of view was appointed, the present appellee had no notice of the application to continue the old jury or to appoint a new one, as the appellee did not appear of record until February 2, 1901.

It was agreed by counsel for the city and the appellant that the street had never been physically opened and while the city agreed to the amendment of the original petition, namely, to substitute a new jury or for a continuance nunc pro tunc of the former one, in its answer of June 10, 1898, it objected to the appointment of a jury of view in the case, for the reason that the revision of the lines of the city plan was not a vacation of the street so as to give the court jurisdiction to appoint the jury.

During the progress of the case before the jury of view the appellant was the only claimant, and as the councils of the city had made no provision for the payment of damages arising from the vacation of Upsal street, it became necessary for the appellant to have the jury assess a corresponding amount of benefits against the property owners affected by the vacation. The proceeding was instituted under the Act of April 21, 1858, sec. 6, P. L. 385, and pursuant to the Act of June 13, 1836, P. L. 551: Melon Street, 1 Pa. Superior Ct. 63; Knox Street, 12 Pa. Superior Ct. 534.

The Supreme Court held in In re Road in Salem Township, 103 Pa. 250, that " the jurisdiction of the court of quarter sessions in road cases is purely statutory, and hence the mode of proceeding prescribed by the law should be strictly pursued, especially in all matters that are intended to affect individuals or the general public with notice. The 3d section of the general road law of 1836 requires the jury of viewers to make their report at the next term or session of the court after their appointment. The object of this requirement is neither doubtful nor unimportant. As has been repeatedly intimated, the act means just what it says. It was intended to fix definitely a time when all parties interested may have an opportunity of examining the report with the view of excepting thereto, or asking such further action as may be deemed necessary. If for any sufficient reason the report cannot be made at the next term, the proper course is to continue the order to view and

to make it returnable to the next succeeding term; but this must be done before the order has expired, that is, before or during the session of court to which it is returnable. If that term is permitted to pass without the presentation of the report, or an order extending the time for making the same, the order to view becomes ipso facto inoperative and with it the authority of the viewer ceases, and the court itself has no power subsequently by a nunc pro tunc order or otherwise, to resuscitate the defunct order to view. If anything further is attempted, it must be done by proceeding de novo."

While the record does not show the inception of the appellee's title, it does show that it was not a party to the proceeding in any way until February 12, 1901. The inaction of the petitioner imported an intention to abandon the proceeding. His delay in not securing continuances of the jury for a period of six years can be construed to mean only that there was such doubt and uncertainty in his mind as to his right to recover in the proceeding as not to warrant him in proceeding further therein; and the change wrought in his mind by a decision in another cause is not sufficient excuse for the delay in inviting a decision in his own. The city had placed itself on record as indifferent to the result by reason of councils not making an appropriation for the damages, so that what it did or refused to do, could not affect the rights of the present appellee, and the appellant doubtless felt that further controversy as the record then stood would not result in any advantage to him. The present appellee, not then being a party to the proceedings, cannot be said to be chargeable, in any way, with the laches of the appellant, as it is not presumed to have had knowledge of the proceedings, neither does it come within the rule that where delay in moving a case to trial is chargeable alike to both parties, neither can impute laches to the other. In this case, the appellant had sole control of the proceeding and could at any time have proceeded with it in due course, but instead of doing so, there was a continuous suspension of the cause for over six years, when he unexpectedly received encouragement from the decision of a case in which he was not a party, and now attempts to impart vitality to the proceeding he had virtually abandoned. The court below might well have so considered the case and refused to have made the nunc pro tunc order

or to appoint the new jury: Waring Bros. & Co. v. Penna. R. R. Co., 176 Pa. 172; Neel v. McElhenny, 189 Pa. 489; Hillside Coal & Iron Co. v. Heermans, 191 Pa. 116; Landes v. Boro. of Norristown, 21 W. N. C. 212.

The appellant's neglect to keep his cause alive by having the appointment of the jury continued from term to term was fatal to that proceeding. As he elected to remain quiet for nearly twelve years after the cause of action arose and for nearly seven years after he began the proceeding, he cannot now complain of the court holding him responsible for the record as he made it. After such inexcusable delay he was not entitled to the order for which he then prayed as a matter of right, and the court in the exercise of its discretion could have required him to present a new petition for a new jury of view.

We do not pass upon the statute of limitations as raised in this case.

The assignments of error are overruled and the decree of the court below is affirmed.